948 So.2d 54 (2007)
E.K., Appellant,
v.
DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Appellee.
No. 3D05-599.
District Court of Appeal of Florida, Third District.
January 10, 2007.
*55 Kevin Coyle Colbert, Miami, for appellant.
Calianne P. Lantz, Assistant District Legal Counsel, for appellee.
Before GREEN, RAMIREZ, and SHEPHERD, JJ.
SHEPHERD, J.
This is an appeal from a trial court order finding a minor child, E.K., dependent as to the father, E.J.K. We have jurisdiction, section 39.815, Florida Statutes (2004); Florida Rules of Appellate Procedure 9.146(b); K.S. v. Dep't of Children & Families, 760 So.2d 1068 (Fla. 5th DCA 2000), and reverse.

FACTUAL BACKGROUND
The record reflects E.K. was taken into the custody of the Department of Children and Families (DCF) from a local hospital two days after she was born. Three weeks later, DCF petitioned the circuit court to have the child adjudicated dependent as to both the father and mother. The sole charge against the father was that he had "neglected, abandoned, and failed to protect the child by leaving the child with an inadequate and impaired caretaker, the mother, who the father knew or should have known, had a history of substance abuse, thereby placing the child at significant risk of harm." The mother, who has a serious substance abuse problem, consented to the adjudication. The father chose to contest the petition.
The father is not a drug user. However, he suffers from a moderate case of combat-related, post-traumatic stress syndrome and intermittent depression. He periodically sees a Veterans Administration supplied psychiatrist for the former condition and faithfully attends group therapy for support. The only medication he has needed for either condition during the last four years is the commonly prescribed anti-depressant Zoloft "on and off" for occasional sleeplessness resulting from the depression. At trial, his psychiatrist and group therapy leader, an advanced nurse practitioner with a specialization in psychiatry and mental health, both testified the father was capable of parenting E.K.
There is no evidence the child was left with any effects from the mother's abuse. Since the time of DCF intervention, the child at all times has been housed either in a DCF shelter or with the maternal aunt pursuant to a court-approved placement.

DISCUSSION
Although it is quite apparent DCF believes the father is no more capable of parenting E.K. than the mother, the record of this case reflects continual change by DCF in its legal and factual theories to achieve that result. Apparently concerned about the viability of its petition as filed, see section 39.01(12), Florida Statutes (2004) ("`[c]hild' or `youth' means any *56 unmarried person under the age of 18 years who has not been emancipated by order of the court"), DCF amended it on the day of trial to add a charge that the father was possessed of a mental illness that rendered him incapable of caring for the child. After trial, the trial judge rejected the amended charge on the ground DCF failed to prove any nexus between the father's mental health condition and ability to parent, see D.H. v. Dep't of Children & Families, 769 So.2d 424, 427 (Fla. 4th DCA 2000) ("where adjudications are based upon prospective abuse, `there must be a showing in the record that the behavior of the parent was beyond the parent's control, likely to continue, and placed the child at risk'") (internal quotations omitted); see also C.M. v. Dep't of Children & Family, 844 So.2d 765, 766 (Fla. 2d DCA 2003) ("[g]enerally, this nexus is established when the parent has a mental or emotional condition that will continue, such as mental illness . . ."), but approved the original charge, holding that the father knowingly failed to prevent the mother's drug use during pregnancy, constituting actual abuse of E.K. by him within the meaning of section 39.01(2), Florida Statutes (2004). The trial court also found E.K. dependent as to the father based upon an unalleged, eleventh-hour DCF argument in its post-trial written submission, that the father abandoned the child within the meaning of section 30.01(1), Florida Statutes (2004), by failing to provide necessities for the child unless asked.
By the time the case arrived here, DCF abandoned the actual harm theory it had promoted from the outset, and sought to convert that charge into an affirmance based upon an alternate theory of "prospective neglect and abandonment" under section 39.01(14)(f), Florida Statutes (2004). DCF continued to urge affirmance based upon its separate, eleventh-hour abandonment assertion. A few weeks later, at oral argument, DCF changed its position yet again, urging as its primary ground for affirmance disputed evidence of physical altercations between the father and the mother in the child's presence during DCF-arranged joint visits at the maternal aunt's residence. Of necessity, DCF invoked a frequently used doctrine of last resort, the "right for the wrong reason" or Tipsy Coachman doctrine, in an effort to excuse its legal meanderings. Malu v. Sec. Nat'l Ins. Co., 898 So.2d 69, 73 (Fla.2005) (citing Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 645 (Fla.1999)).
We reject DCF's most recent entreaty for affirmance  the physical altercation argument  for two reasons. First, there being no finding of domestic violence, we are unable to affirm on the ground that such domestic violence as may have occurred had an adverse effect on the child. See M.B. v. Dep't of Children & Family Servs., 937 So.2d 709, 710 (Fla. 2d DCA 2006) (citing 39.01(2), Fla. Stat.) ("for `harm' resulting from witnessing domestic violence witnessed by the child to constitute `abuse,' the domestic violence witnessed by the child must result in some physical, mental, or sexual injury to the child"); D.R. v. Dep't of Children & Family Servs., 898 So.2d 254, 255 (Fla. 3d DCA 2005) (affirming trial court finding of dependency where child's knowledge of domestic disputes "had an adverse [e]ffect on the child"); B.C. v. Dep't of Children & Families, 846 So.2d 1273 (Fla. 4th DCA 2003) (adopting elements of W.T. v. Dep't of Children & Families, 787 So.2d 184 (Fla. 5th DCA 2001) to conclude instances of domestic violence that took place between father and father's former wife in front of child did not provide sufficient grounds to adjudicate child dependent); W.T. v. Dep't of Children & Families, 787 So.2d at 184-85 (reversing finding of dependency *57 where there was no finding that any domestic violence between parents had any effect on the child).
Second, the "Tipsy Coachman" doctrine does not rescue parties from their own inattention to important legal detail. Rather, it is a doctrine that allows an appellee arguing for the affirmance of a judgment to "present any argument supported by the record even if not expressly asserted in the lower court," Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d at 645, and appellate courts latitude to uphold a judgment on the argument thus made. The doctrine is grounded on the view that it is "the decision of the trial court that primarily matters, not the reasoning used." Id. Here, however, DCF's primary ground for affirmance was not known either to us or opposing counsel until articulated during oral argument. We are unwilling to allow DCF to invoke the doctrine under these circumstances. Cf. Adams v. Shiver, 890 So.2d 1199, 1202 (Fla. 1st DCA 2005) (Browning, J., dissenting) (Tipsy Coachman doctrine not applicable where "the parties will, for the first time, become acquainted with the argument which forms the basis and rationale of the[e] court's decision upon receipt of the majority's opinion.").
As to the only other claim upon which the trial court found E.K. dependent as to the father, the eleventh-hour abandonment claim, this claim likewise is insufficiently supported by evidence adduced at the trial. D.R. v. Dep't of Children & Family Servs., 898 So.2d at 255 ("An adjudication of dependency will be upheld where competent substantial evidence supports the trial court's findings of fact."). For a child to be adjudicated dependent as to a parent on the ground of abandonment, DCF must establish its allegations by a preponderance of the evidence that the parent "while being able, makes no provision for the child's support and makes no effort to communicate with the child, which situation is sufficient to evince a willful rejection of parental obligations." § 39.01(1), Fla. Stat. (2004) (emphasis added); In re M.F., 770 So.2d 1189, 1192 (Fla.2000). Although the father here is not a perfect parent, the evidence in the record indicates he provided necessaries when asked and regularly visited and communicated with his daughter. See S.B. v. Dep't of Children & Family Servs., 834 So.2d 415, 417 (Fla. 2d DCA 2003) (concluding that mother's failure to financially support child for two months when child stayed with grandmother did not constitute abandonment because mother tried to retrieve the child from grandmother's home, contacted the child, and gave authorization for medical treatment if necessary). The adjudication on this ground cannot stand.
We recognize the extraordinary responsibility the legislature has reposed in DCF to intervene to provide for the care, safety, and protection of the children of this state when statutorily required. § 39.001, Fla. Stat. (2004). However, it is also well settled that a parent has a fundamental liberty interest in the care, custody, and management of his or her child. Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); State ex rel. Sparks v. Reeves, 97 So.2d 18, 20 (Fla.1957). For this reason, DCF must, like any other litigant, be prepared to properly plead and prove its case when a parent contests its proposed action. Because DCF failed to meet its fundamental legal obligation in this regard in this case, we reverse the adjudication of dependency below.
Reversed.