994 So.2d 1233 (2008)
Orin A. MIMS, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D07-2109.
District Court of Appeal of Florida, Third District.
November 19, 2008.
*1234 Orin A. Mims, in proper person.
Bill McCollum, Attorney General, and Nicholas A. Merlin, Assistant Attorney General, for appellee.
Before COPE, SHEPHERD, and SALTER, JJ.
SHEPHERD, J.
This is an appeal from a trial court order prohibiting a criminal defendant from filing further pro se motions. The reason articulated for the action was that the defendant had filed four successive Florida Rule of Criminal Procedure 3.800 motions to correct illegal sentence which "argue[d] the same issues [as] in previous motions." The trial court was incorrect.
The four motions in question and the grounds asserted in each are as follows:
1. March 9, 2004: Mims files his first Motion to Correct Illegal Sentence. In this motion, "[t]he defendant assert[ed] that the sentencing scoresheet presented to the court on the day [the] sentence was imposed was wholly inaccurate...." The trial court denied the motion, finding it "meritless" and "lacking in any good faith basis." The court continued to "forewarn[] [the defendant] that filing such pleadings in the future will warrant sanctions...."
2. May 17, 2005: Mims files his second Rule 3.800 Motion to Correct Illegal Sentence. In this motion, Mims alleged that "The[] convictions that the trial court relied on to qualify the defendant as a habitual felony offender do[] not satisfy the substantive requirements necessary to qualify the defendant as a habitual felony offender...." That motion was denied, and the trial court again found the motion "[to have been made] without any apparent good faith," "placed [the defendant] on notice that the filing of similar motions in the future will subject him to sanctions, including a rule to show cause why he should not be held in contempt...."
3. December 1, 2006: Mims files his third Motion to Correct Illegal Sentence. In this motion, Mims argued his sentence was illegal because it was imposed by a successor judge, rather than by the judge who accepted his plea. He also argued his *1235 sentence was illegal because the judge never expressly pronounced him guilty in open court, and the written judgment was not in the manner and form required by law. This motion was considered by a different trial judge than the one who heard the first two motions and was denied.
4. April 3, 2007: Mims files his fourth Motion to Correct Illegal Sentence. In this motion, Mims argued his sentence was illegal because the trial court failed to determine whether his sentence would run concurrent or consecutive with a sentence yet to be pronounced. The trial court struck the motion, stating, "This is Defendant's third [sic] Motion to Correct Illegal Sentence in which he raises the same claim regarding his 9.2[-]year sentence." (emphasis added).[1] Soon thereafter, the trial court issued an order to show cause to Defendant why he should not be prohibited from filing future pro se motions.
Florida Rule of Criminal Procedure 3.800 allows a court to correct an illegal sentence "at any time." State v. McBride, 848 So.2d 287, 290 (Fla.2003). Florida courts, including the Florida Supreme Court, have held that the phrase "at any time" allows defendants to file successive motions under Rule 3.800. Id. Only a previously adjudicated Rule 3.800 claim may not be raised a second time. Pleasure v. State, 931 So.2d 1000, 1002 (Fla. 3d DCA 2006). It is clear in this case that no motion filed by this defendant sought to raise a previously adjudicated ground, as claimed by the trial court.
Recognizing the trial court fatally misread the substance of the motions, the State seeks to save the decision of the trial court by arguing Defendant also filed two unsuccessful Rule 3.850 motions and an unsuccessful motion to recuse one of the trial judges who handled his postconviction litigation. However, there is nothing in the record to suggest these motions filed by Defendant were frivolous, meritless, or not advanced in good faith. Moreover, the argument advanced by the State was not made or considered by the trial court. We cannot consider this argument for the first time on appeal. See Dade County Sch. Bd. v. Radio Station WQBA, 731 So.2d 638, 644 (Fla.1999).[2]
We do not condone the filing of meritless or frivolous petitions and motions in our courts. See, e.g., Minor v. State, 963 So.2d 797 (Fla. 3d DCA 2007); Johnson v. State, 915 So.2d 682 (Fla. 3d DCA 2005); Hepburn v. State, 934 So.2d 515 (Fla. 3d DCA 2005). However, "denying a pro se litigant the opportunity to *1236 file future petitions is a serious sanction, especially where the litigant is a criminal defendant who has been prevented from further attacking his or her conviction, sentence, or conditions of confinement...." State v. Spencer, 751 So.2d 47, 48 (Fla.1999); see also, Art. I, § 21, Fla. Const. ("The courts shall be open to every person for redress of any injury, ..."). In this case, the trial court erred in prohibiting the defendant from filing further pro se motions in the trial court. The trial court order prohibiting Defendant from filing future pro se pleadings is reversed and the case remanded for consideration of the merits of Defendant's current postconviction claim.
Reversed and remanded with directions.
COPE, J., concurs.
SALTER, J., dissenting.
I respectfully dissent. I believe that the trial judge correctly determined that the fourth motion by appellant Orin Mims, under Florida Rule of Criminal Procedure 3.800 (following two unsuccessful motions for postconviction relief under Florida Rule of Criminal Procedure 3.850 and the three prior unsuccessful motions under Rule 3.800), was frivolous, previously adjudicated, and thus appropriately stricken and sanctioned. I would therefore affirm the orders below.
In order to explain my departure from the majority's analysis, I consider Florida's liberal view of postconviction motions by pro se prisoners; a countervailing line of cases and policies establishing limits to that liberality; and the application of these principles to Mims' latest filings.

I. Gideon's Trumpet

Gideon's Trumpet is more than a book or movie. The underlying story of Clarence Gideon's pro se fight for justice, successfully carried all the way to the Supreme Court of the United States,[3] reflects a deeply cherished American belief that our courts should hear and fairly decide all claims, even those of a prisoner convicted by his or her peers. Rich or poor, in jail or out, our courts are constitutionally[4] open to hear the claims of our citizens.
And Gideon was a Florida case. Our rules of procedure, our public defender system, and our case law are a fitting legacy for Mr. Gideon's courage and persistence. In Mr. Mims' case, our Rule 3.800, "Correction, Reduction, and Modification of Sentences," has no time limit. Other laws and rules contain limitations periods, but not Rule 3.800: "A court may at any time correct an illegal sentence imposed by it...." (emphasis added). In the thirty-fifth year of serving a life sentence, for example, a defendant may freely and collaterally challenge the sentence if it was, in fact, contrary to the applicable law,[5] and the court must grant relief if that proves to be the case. While a two-year rule may bar other kinds of postconviction challenges, Florida's courthouse door remains continuously open to the prisoner incorrectly sentenced. Fairly, she or he should not serve a day longer than the law provides.
*1237 Florida also allows motions under Rule 3.800 to be filed "successively," so that a defendant or an attorney have more than one chance to persuade the court that a sentence is illegal. State v. McBride, 848 So.2d 287, 290 (Fla.2003).[6] It is here, however, that a common sense limitation is imposed; a successive motion must not have been previously (and adversely) adjudicated. Pleasure v. State, 931 So.2d 1000, 1002 (Fla. 3d DCA 2006). If the defendant raised the identical issue in a prior motion and lost on the merits, collateral estoppel bars the second bite at the same apple. Id. If the defendant raised the issue, lost on the merits, and also lost an appeal from the order denying the motion on the merits, the "law of the case" doctrine also bars the second bite at the apple. Id. at n. 2.
Recognizing that an indigent prisoner is not ordinarily entitled to a public defender or other counsel to prepare the postconviction motions, we afford the movant a great deal of latitude. The motions and briefs may be, and frequently are, handwritten. Filing fees are waived when indigency is established. Extensions of time are liberally granted. Clarence Gideon would have been proud to see the changes he helped forge.

II. Reality Bites

But the judicial system's capacity to consider and rule upon these postconviction motions is not limitless. Our trial courts are overworked[7] and do not have the human resources and technology to return over and over again to records of cases decided long ago. In Mims' case, we are focused on only one felony grand theft charge brought over eight years ago,[8] but Mims has many other convictions, at least one of which has also required postconviction trial court and appellate consideration.
It is not surprising, therefore, that the State[9] sometimes seeks, and the trial judges consider, a bar against further filings, and a recommendation for other sanctions, when a previously adjudicated claim is re-filed. Our Supreme Court has established an "order to show cause" procedure to afford due process to the pro se movant when such sanctions are under consideration. State v. Spencer, 751 So.2d 47, 48-49 (Fla.1999). This Court has recognized, as a counterweight to our constitutional mandate to be open and accessible, that there is absolutely "no constitutional right to file a frivolous lawsuit," and there is a point where "enough *1238 is enough."[10] With the competing principles of accessibility and finality in mind, and considering also the limited judicial resources available to respond to serial postconviction movants, we review the record in Mr. Mims' latest motion.

III. Mr. Mims' Claims, Then and Now

The record below includes many of Mims' prior motions with the orders and supporting documents in the record of those cases. The majority states that "there is nothing in the record to suggest these motions filed by Defendant were frivolous, meritless, or not advanced in good faith." I disagree.
Over five years ago, the trial court denied Mims' motion for postconviction relief under Rule 3.850. Among other grounds, Mims asserted that he had received ineffective assistance of counsel. Trial counsel induced him to plead guilty, Mims alleged under oath, by erroneously advising him that any sentence he received in the case would run concurrently with any sentence received on his pending violation of conditional release in another case. The court conducted an evidentiary hearing on February 7, 2003, on this and other claims. Mims' defense counsel testified, as did Mims himself. The court made the following findings:
Defendant's trial counsel testified at the evidentiary hearing that he specifically told the Defendant that the sentence in this case could not run concurrent with any future sentence. Counsel also testified that he told the Defendant that this plea would result in a violation of his conditional release, that he would be sentenced to serve the remainder of his conditional release sentence, and that it would be up to the Department of Corrections to determine how long that sentence would be. He also testified that he told the Defendant that he would likely have to serve his conditional release sentence before beginning to serve the sentence imposed in this case. This is further supported by a similar statement made by trial counsel to the Court at the time of sentencing.[11]
Mims' appeal from these and other findings denying his postconviction claims was affirmed by this Court over four years ago. Mims v. State, 876 So.2d 569 (Fla. 3d DCA 2004). In later rulings on later postconviction motions, the trial court held that Mims "has deliberately ignored the true facts" and that his motion was "lacking in any good faith basis;"[12] that a third motion for postconviction relief "raises the identical issue raised in Defendant's second motion;"[13] and that Mims' 2005 motion (his second motion based on Rule 3.800) to correct illegal sentence "is made without any apparent good faith."[14] Undaunted, Mims filed another motion under Rule 3.800 that was also denied.
The motion and orders presently under review are appropriately considered against that backdrop, and not in a vacuum. The motion was Mims' seventh postconviction motion, and his fourth under *1239 Rule 3.800. Mims alleged that the trial court had imposed sentence "without ever determining whether this sentence would be served concurrent or consecutive to defendant's conditional release sentence." Mims cites no case or statute requiring any such determination, because none exists. To the contrary, section 921.16(1), Florida Statutes (2000), made it clear that the two sentences would run consecutively "unless the court directs that two or more of the sentences be served concurrently." The court gave no direction for concurrent terms, and Mims does not argue otherwise. And above all, the trial court had actually determined, four years earlier and after an evidentiary hearing, that Mims was told by his counsel that the sentences would not run concurrently and that the same statements were made to Mims in open court. That determination was on the merits and was affirmed on appeal here.
The trial court's decisions to strike Mims' motion and to order a showing of good cause why sanctions should not be imposed were based on the record. The trial court followed applicable law when it imposed the sanctions after considering Mims' response.

IV. Conclusion

The claims here, unlike Clarence Gideon's, are completely baseless. While our rules and decisions are intended to give every opportunity to pro se incarcerated defendants to raise lawful claims, they are not a license to file motions based on any new theory someone may have heard around the correctional facility corridors. Our trial judges are right to increase their level of scrutiny and skepticism, and to decrease their level of tolerance for frivolousness, with each successive Rule 3 motion. In a time of increasingly burdened judicial resources, our trial and appellate courts need to concentrate on serious legal claims, not matters already adjudicated. When serious postconviction legal claims have been presented, the trial and appellate courts have granted relief. We have commended, and do so again, the pro bono volunteer lawyers and law students (usually participating in law school postconviction clinics) who assist prisoners in separating proper claims from frivolous theories. But Mims' latest product falls into the latter category, and he was properly sanctioned.
I therefore dissent. I would affirm the trial court's order striking Mims' frivolous, successive postconviction motion and barring further pro se motions in the underlying criminal case, F00-18067.
NOTES
[1] The trial court also erred by striking the motion rather than ruling upon it. See Jordan v. State, 760 So.2d 973, 973 (Fla. 2d DCA 2000) ("When a trial court denies a motion for postconviction relief and restricts a litigant's right to proceed subsequently in court, it must address the merits of the claims advanced by the litigant and determine that they are frivolous before commencing down the road to bar future filings."); see also Morgan v. State, 983 So.2d 1230, 1231 (Fla. 5th DCA 2008); Long v. State, 793 So.2d 1141 (Fla. 1st DCA 2001).
[2] We applaud the dissent's encomium to Clarence Gideon. See infra pp. 1236-37. We also agree that all too often, prisoners abuse their postconviction rights. See infra p. 1238. The dissent makes a fine case that Mr. Mims should perhaps be barred from future filings in the circuit court based upon other conduct. If we were the prosecutor or a court of the first instance, we might agree. However, this is an error correcting court. Basic principles of jurisprudential rectitude preclude our affirmance of the trial court judgment based upon arguments not made below. See, e.g., E.K. v. Dep't of Children & Family Servs., 948 So.2d 54, 57 (Fla. 3d DCA 2007).
[3] Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963).
[4] The majority correctly cites Article I, section 21 of the Florida Constitution for the fact that our courts "shall be open to every person for redress of any injury." "Every person" clearly includes Mr. Mims, just as it included Clarence Gideon. "Any injury," however, is limited by the common sense principle (and a well-settled line of cases) that no one gets multiple bites at the apple.
[5] This also assumes, as I develop below, that the prisoner has not previously made this claim and lost after any permissible appeals have been decided.
[6] The seven Justices of the Florida Supreme Court issued three separate opinions in McBride, reflecting the tension between our courts' policy of accessibility to postconviction claims and the need for finality.
[7] Many of our circuit courts, for example, are operating with a complement of judges well below the certified need for the circuit, and they are doing so after devastating layoffs and budget cuts.
[8] Mr. Mims' sentence was enhanced as a habitual felony offender because of a spate of other convictions for armed robbery, kidnapping, assault, and other charges. Mims previously, but unsuccessfully, challenged that aspect of his sentence as well. In an order entered June 5, 2005, in the circuit court (a part of the record here), the trial court recounted ten qualifying prior felony convictions. The docket of this Court reflects thirteen separate postconviction cases, eight of which arose from the single circuit court case involved in this appeal. Three separate trial judges have considered Mims' postconviction claims. The successor judges have had to "re-learn" the file.
[9] When a postconviction motion is filed, the State is ordinarily required to file a response. In the case of a "frequent filer" like Mr. Mims, the State must research the record, dig up past responses and rulings, and (if appropriate) locate transcriptsif the transcripts were ever prepared and have not been destroyed. The State's resources are also limited, and it always has a demanding caseload of current prosecutions.
[10] Barber v. State, 994 So.2d 376 (Fla. 3d DCA 2008) (and cases cited therein).
[11] Order Den. Def.'s Mot. For Postconviction Relief, Feb. 8, 2003, 5.
[12] Order Den. Def.'s Mot. To Correct Illegal Sentence, Mar. 19, 2004, 3 (in this order, the trial court also warned Mims that "filing such pleadings in the future will warrant sanctions").
[13] Order Dismissing Def.'s Third Mot. For Postconviction Relief, Feb. 10, 2005.
[14] Order Den. Def.'s Mot. To Correct Illegal Sentence, June 8, 2005, 3. This Order also included a warning that "the filing of similar motions in the future will subject [Mims] to sanctions." Id.