24 So.3d 590 (2009)
Martha SMITH as Plenary Guardian, etc., et al., Appellant,
v.
AGENCY FOR HEALTH CARE ADMINISTRATION, Appellee.
No. 5D08-1142.
District Court of Appeal of Florida, Fifth District.
October 23, 2009.
Rehearing Denied January 4, 2010.
Roy D. Wasson, of Wasson & Associates, Chartered, Miami, and W.M. Chanfrau, Sr., of Chanfrau & Chanfrau, P.A., Daytona Beach, for Appellants.
Sarah Lahlou-Amine and Hala A. Sandridge of Fowler White Boggs, P.A., Tampa, and James H.K. Bruner, Sr., Tallahassee, for Appellee.
LAWSON, J.
The personal injury case brought below by Martha Smith, as plenary guardian of Maurice Thomas, settled for $2,225,000.00. Smith appeals the final order denying her motion to reduce the State of Florida's Medicaid lien from $122,783.87 to $40,927.96. We affirm.
Florida's Medicaid Third-Party Liability Act, section 409.910, Florida Statutes (2007), authorizes the State to recover from a personal injury settlement or verdict money that the State paid for the plaintiff's medical care prior to the tort recovery. The statute limits the State's *591 recovery to half of the tort recovery, after deducting attorney's fees and costs. According to the record before us, Medicaid could have recovered up to $707,778.00 in medical expenses using the formula in section 409.910. Because the State's Medicaid lien in this case totaled far less than this statutory cap, section 409.910 allowed the State to fully recover from his settlement the $122,783.87 that it paid on Thomas' behalf.
The only argument made below for reducing the State's lien was that Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006), mandates "a percentage reduction [in the Medicaid lien] in the same ratio as the settlement bears to actual damages." According to Smith, the $2,225,000.00 recovery in this case represented only one third of Thomas' total damages. Both Smith and the tortfeasor agreed below that there were significant challenges in proving liability which contributed to a settlement amount far lower than Thomas' actual damages. Smith reasoned that because she settled Thomas' claim for one-third of its value, Ahlborn required the trial court to also reduce the State's Medicaid lien to one-third of the total lien amount  from $122,783.87 to $40,927.96.
Smith's argument rests on a misreading of Ahlborn, and the trial court properly rejected it. Ahlborn simply held that under federal law a state's Medicaid lien recovery is limited to the portion of a verdict or settlement representing amounts recovered by a plaintiff for medical expenses. The parties in Ahlborn had stipulated to a figure representing the total recovery for medical expenses in their case, and used the method now advanced in this case to calculate their stipulated figure. However, the court in Ahlborn simply accepted the stipulation, and in no way adopted the formula as a required or sanctioned method to determine the medical expense portion of an overall settlement amount.
Moreover, the formula used by the Ahlborn parties is problematic in that it assumes the Medicaid lien amount to be the only medical expense included by the plaintiff as part of his or her overall damage claim, which is not a reasonable assumption. Stated another way, without knowing how much of a plaintiff's total damage claim is comprised of medical expenses, there is no way to calculate the medical expense portion of a settlement by simply comparing the damage claim to the ultimate settlement amount. For example, the recovery in this case ($2,225,000.00) is approximately one third of the total damages claimed by Smith for Thomas ($7,000,000.00). That information, alone, tells us nothing about the amount ultimately recovered for Thomas' medical expenses  except that it is probably less than the amount he claimed for medical expenses. If we knew, for example, that the medical expense portion of the total damage claim was $600,000.00, we could reduce that figure by one third to approximate the settlement amount attributable to medical expenses.[1] But, knowing only the *592 total damages claimed and the ultimate settlement amount simply does not allow one to reasonably estimate the medical expense portion of a settlement.
Smith and the dissent are correct that under Ahlborn a plaintiff should be afforded an opportunity to seek the reduction of a Medicaid lien amount by demonstrating, with evidence, that the lien amount exceeds the amount recovered for medical expenses. The problem here is that instead of making that showing, Smith presented her narrow legal argument premised upon her misreading of Ahlborn and provided only the total damage figure of $7,000,000.00. Smith proffered nothing from which the trial judge could determine how much of the $7,000,000.00 in damages represented Thomas' medical expenses, and made no other showing to support her argument that the medical expense portion of the $2,225,000.00 settlement was less than $122,783.87. Without that showing, the trial court properly applied section 409.910, Florida Statutes, and allowed the State to recover the full $122,783.87.
AFFIRMED.
GRIFFIN, J., concurs.
TORPY, J., dissents, with opinion.
TORPY, J., dissenting.
Appellee and the majority acknowledge that Appellee's lien rights attach only to that portion of the recovery that represents recovered expenses for medical goods and services. This is because federal law only permits the states to assert a lien to this extent. Ark. Dep't of Health & Human Servs. v. Ahlborn, 547 U.S. 268, 292, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006). Consistent with federal law, Florida's statutes only permit the Agency for Health Care Administration[2] to assert its lien rights to "third-party benefits," a phrase of art defined by the statute as including the component of any recovery attributable only to medical expenses. § 409.910(1), (5), (6), Fla. Stat. (2007); see § 409.901(4), (27) (defining "Benefit" and "Third-party benefit"). Appellee also concedes that had the recovery here been the product of a special interrogatory verdict wherein the jury found that total medical expenses were $122,783.87, reduced by a percentage attributable to the ward's comparative negligence, then Appellee's lien necessarily would be reduced by the same percentage.
In a case like this one, where the parties settle the dispute short of trial, Appellee and the majority take divergent paths to the same ending place. Appellee takes the view that apportionment is unnecessary. The majority acknowledges that "a plaintiff should be afforded an opportunity to seek the reduction of a Medicaid lien amount by demonstrating, with evidence, that the lien amount exceeds the amount recovered for medical expenses," but holds that Appellant did not make that showing here. I disagree with both views but only address the view expressed by the majority.
Appellant contends that, due to comparative negligence or other potential defenses, she recovered one-half or less of the *593 actual value of her case. Therefore, she contends, Appellee's lien should be reduced by the same percentage, just as if the case had gone to trial with the same resulting recovery. The circuit judge refused to consider Appellant's evidence or methodology. Instead, he denied Appellant's request "finding that Arkansas Department of Health and Human Services v. Ahlborn, 547 U.S. 268, 126 S.Ct. 1752, 164 L.Ed.2d 459 (2006) does not govern Section 409.910, Florida Statutes...."
The majority denies this appeal for two reasons, neither of which was argued by Appellee here or below. By doing so, the majority misapplies the "tipsy coachman" rule by justifying affirmance on grounds to which Appellant never had the opportunity to respond. E.K. v. Dep't of Children & Family Servs., 948 So.2d 54, 57 (Fla. 3d DCA 2007).
The first reason is based on the majority's assumption that Appellant's actual medical expenses exceeded the amount expended by Appellee, which the majority concludes is the only reasonable assumption. This was not the reason relied upon by the trial judge and was not raised by Appellee here or below because, I assume, it has no basis in fact. Even when the suggestion was raised at oral argument, Appellee made no attempt to credit the assumption after it was flatly repudiated by counsel for Appellant. The fact is that, even had Appellant incurred bills for medical services in excess of the sums paid by Medicaid, Appellant's recovery would have been limited to this amount because the medical service providers accept Medicaid reimbursement in full satisfaction of all claims. See Thyssenkrupp Elevator Corp. v. Lasky, 868 So.2d 547, 549 (Fla. 4th DCA 2003). Thus, there is no reason to assume that Appellant's compensable expenses exceeded the amount paid by Medicaid. This illustrates a major problem with using the "tipsy coachman" rule to affirm a judgment on a basis not argued. Had Appellee argued this point, Appellant might have sought to supplement the record here with additional information, such as interrogatory answers or depositions not included in the limited record we have. Further, had Appellee argued the point below, Appellant might have sought to proffer additional evidence or continue the hearing until evidence could be obtained. Instead, we are left to speculate.[3]
In denying the appeal on this basis, the majority has also misallocated the burden of proof. By statute, Appellee's lien only attached to the "third-party benefits," a defined phrase meaning the amount recovered for medical goods and services. There may be a difference between the amount of Appellee's claim and the amount of its lien, because the amount of third-party benefits recovered for the claim may be smaller than the claim. It should have been Appellee's burden to establish the amount of the lien just as any other lienor bears the burden to prove the validity and amount of its lien.
The second basis offered by the majority for rejecting this appeal is akin to a preservation argument. Without even a suggestion by Appellee that Appellant failed to preserve this issue, the majority opines that Appellant made too narrow a legal *594 argument premised upon her "misreading of Ahlborn." This conclusion is based solely on a statement made by Appellant in her motion wherein she asserts that, "pursuant to" Ahlborn, Appellee's Medicaid "lien is subject to a percentage reduction in the same ratio as the settlement bears to actual damages." The majority calls this a misreading of Ahlborn because, says the majority, Ahlborn does not "mandate" the use of this method, which, in Ahlborn, was the method agreed to by the parties. I do not read the motion to suggest that Ahlborn "mandates" (a word chosen by the majority, not Appellant) this method. Even if it did, the fact remains that this is a valid method of arriving at the answer  an answer that is compelled by federal law, Florida Statutes and Ahlborn. The statute does not provide, nor purport to provide, a method for determining the amount of "third-party benefits;" it only places a cap on the total lien amount. Appellee did not advance an alternative method below or on appeal, and the majority suggests no other method. Nor does the majority hold that the method proffered by Appellant is wrong.
There is no other method for solving this problem. That might be why the parties in Ahlborn used it there. This case was settled short of a jury trial. Appellant and the tortfeasors agreed in affidavits filed with the court that Appellant compromised her claim, the value of which would have been between $5,000,000 and $7,500,000, but for the application of comparative negligence or other defenses. Had the jury reached this same conclusion and reduced the award due to comparative negligence, it would have reduced all damage elements by the same percentage. The trial judge is no less equipped to make this determination than a jury, and should apply the same methodology. See Ahlborn, 547 U.S. at 288, 126 S.Ct. 1752 (settlement manipulation to avoid lien can be avoided by "submitting the matter to a court for decision"). To have the trial judge make this determination is all that Appellant sought. Appellant advanced a valid method for doing it. Whether the method is mandated by Ahlborn or not does not seem to make much difference. The point is that the trial judge should have made the determination when asked. I do not think Appellant is precluded from seeking this relief from us simply because she might have overstated the holding in a case, and I know of no precedent that supports this view.
I would reverse.
NOTES
[1] Accepting this method and the hypothetical $600,000.00 (as the medical expense portion of the $7,000,000.00 damage claim) would mean that $200,000.00 of the $2,225,000.00 settlement would be available to satisfy a Medicaid lien under Ahlborn. In this case, the State would be entitled to recover the full lien amount, $122,783.87, since the lien would be less than the medical expense portion of the settlement. Although we believe that this method (reducing the medical expense portion of the damage claim in the same ratio as the settlement bears to the total damage claim) might produce a reasonable estimation of the medical expense portion of a settlement in some cases, it may not work in many cases. For example, a tortfeasor could agree, in settlement, to pay 100% of a plaintiff's medical expense claim, but not all non-economic damages. If only the non-economic damage portion of a claim were compromised in settlement, the formula would not work at all. Rather, the full medical expense portion of the original damage claim would be available to satisfy the State's lien, even though the claim settled for less than the damages originally alleged.
[2] This is the agency tasked with enforcing the Medicaid Third-Party Liability Act, section 409.910, Florida Statutes.
[3] Here, the majority relies upon a failure to negate a fact-that no compensable medical expenses were incurred beyond the $122,783.87. In a case such as this it is easy for me to see why a plaintiff would not offer this testimony. Medicaid had paid all the bills and had all the records. Discovery had been exchanged. If it was an issue, I assume someone would have raised it before today. This doctrine should not be applied unless the record is clear on a point one way or the other. See Porter v. Porter, 913 So.2d 691 (Fla. 3d DCA 2005).