848 So.2d 287 (2003)
STATE of Florida, Petitioner,
v.
Antoine L. McBRIDE, Respondent.
No. SC02-627.
Supreme Court of Florida.
May 15, 2003.
*288 Charles J. Crist, Jr., Attorney General, and Robin A. Compton and Kellie A. Nielan, Assistant Attorneys General, Daytona Beach, for Petitioner.
Beverly A. Pohl and Bruce Rogow of Bruce S. Rogow, P.A., Fort Lauderdale, for Respondent.
CANTERO, J.
We review McBride v. State, 810 So.2d 1019, 1023 (Fla. 5th DCA 2002), in which the district court of appeal certified the following question of great public importance:
IS A DEFENDANT ENTITLED TO RELIEF PURSUANT TO A SUCCESSIVE RULE 3.800(a) MOTION TO CORRECT AN ILLEGAL SENTENCE WHEN THE DEFENDANT RAISED THE IDENTICAL ISSUE IN A PRIOR RULE 3.800(a) MOTION THAT WAS DENIED BY THE TRIAL COURT BUT NEVER APPEALED TO THE DISTRICT COURT OF APPEAL?
We have jurisdiction. Art. V, § 3(b)(4), Fla. Const. We answer the question in the negative and quash the decision of the Fifth District Court of Appeal.

I. Facts

Pursuant to a plea agreement, McBride entered a plea of nolo contendere to charges of attempted first-degree murder with a firearm, possession of a firearm by a convicted felon, and robbery with a firearm. See McBride, 810 So.2d at 1020. The court sentenced him as a habitual felony offender to concurrent thirty-year terms of imprisonment on each of the *289 three counts. Id. In May 1990, however, when he committed the attempted firstdegree murder, which is a life felony, life felonies were not subject to sentence enhancement under the habitual offender statute. See Lamont v. State, 610 So.2d 435 (Fla.1992).
In 2000, respondent filed a motion under Florida Rule of Criminal Procedure 3.800(a), asserting that the habitual offender sentence imposed for the attempted first-degree murder was illegal and requesting that he be resentenced. The court denied the motion, and McBride did not appeal. The following year, McBride filed another motion under the same rule asserting the same argument. Noting the successive nature of the claim, the trial court denied the motion, and this time McBride appealed. The Fifth District reversed, holding that the law of the case doctrine did not bar review by an appellate court and that the illegal sentence should be corrected. The appellate court thus reversed and remanded for further proceedings and certified the question quoted above. McBride, 810 So.2d at 1023.

II. McBride's Habitual Offender Sentence

This Court previously has held that habitual offender sentences imposed for life felonies when life felonies were not subject to the habitual offender statute are illegal. See Carter v. State, 786 So.2d 1173, 1180 (Fla.2001); Lamont v. State, 610 So.2d 435, 438 (Fla.1992). It is therefore undisputed that McBride's habitual offender sentence for attempted first-degree murder is illegal. Such a sentence ordinarily may be corrected under rule 3.800(a). See Carter, 786 So.2d at 1180. Because McBride already had filed the identical motion and the court had denied it, however, we must determine whether McBride is procedurally barred from obtaining relief. Our standard of review on such an issue is de novo. See West v. State, 790 So.2d 513, 514 (Fla. 5th DCA 2001); see also State v. Nuckolls, 677 So.2d 12, 13 (Fla. 5th DCA 1996) (noting that "[t]he issues in this case revolve around the legal sufficiency of the pleadings and therefore we review de novo the trial court's ruling").
Florida Rule of Criminal Procedure 3.800(a) provides as follows, in relevant part:
A court may at any time correct an illegal sentence imposed by it, or an incorrect calculation made by it in a sentencing scoresheet, or a sentence that does not grant proper credit for time served when it is affirmatively alleged that the court records demonstrate on their face an entitlement to that relief ....
As we have previously stated, rule 3.800(a) "is intended to balance the need for finality of convictions and sentences with the goal of ensuring that criminal defendants do not serve sentences imposed contrary to the requirements of law." Carter, 786 So.2d at 1176. A sentence is illegal if it imposes "a kind of punishment that no judge under the entire body of sentencing statutes could possibly inflict under any set of factual circumstances." Id. at 1178 (quoting and approving definition in Blakley v. State, 746 So.2d 1182, 1186-87 (Fla. 4th DCA 1999)).

III. The Law of the Case Doctrine

The district court correctly held that the law of the case doctrine does not prevent McBride from relitigating the legality of his habitual offender sentence. That doctrine requires that "questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." Florida Dep't of Transp. v. Juliano, 801 So.2d 101, 105 *290 (Fla.2001) (emphasis added). Law-of-the-case principles do not apply unless the issues are decided on appeal. Id.; see also Kelly v. State, 739 So.2d 1164, 1164 (Fla. 5th DCA 1999) (holding that "[s]uccessive 3.800(a) motions re-addressing issues previously considered and rejected on the merits and reviewed on appeal are barred by the doctrine of law of the case"). Because McBride did not appeal the previous order denying his rule 3.800 motion, the district court correctly held that the law of the case doctrine does not apply.

IV. Res Judicata and Collateral Estoppel Principles

Our conclusion that the law of the case doctrine does not bar McBride's claim does not, however, end our analysis. The State urges us to apply the common law doctrine of res judicata. This Court has explained that doctrine as follows:
A judgment on the merits rendered in a former suit between the same parties or their privies, upon the same cause of action, by a court of competent jurisdiction, is conclusive not only as to every matter which was offered and received to sustain or defeat the claim, but as to every other matter which might with propriety have been litigated and determined in that action.
Juliano, 801 So.2d at 105 (quoting Kimbrell v. Paige, 448 So.2d 1009, 1012 (Fla. 1984)). Thus, under res judicata, a judgment on the merits bars a subsequent action between the same parties on the same cause of action. See Denson v. State, 775 So.2d 288, 290 (Fla.2000) (applying res judicata to deny a habeas petition where the defendant had raised the same claim in a 3.800 motion decided against him on the merits and the defendant had exhausted all appropriate appellate review). Res judicata, however, prohibits not only relitigation of claims raised but also the litigation of claims that could have been raised in the prior action. Juliano, 801 So.2d at 105. The doctrine would require a motion to correct an illegal sentence to raise all arguments that the sentence is illegal. Subsequent motions would be barred if they contained arguments that were or could have been raised in the prior motion. Rule 3.800, however, allows a court to correct an illegal sentence "at any time." Florida courts have held, and we agree, that the phrase "at any time" allows defendants to file successive motions under rule 3.800. See Raley v. State, 675 So.2d 170, 173 (Fla. 5th DCA 1996); Barnes v. State, 661 So.2d 71, 71 (Fla. 2d DCA 1995). Thus, rule 3.800 expressly rejects application of res judicata principles to such motions.
Again, however, this conclusion does not end the analysis. Although res judicata may not apply to motions filed under rule 3.800, the similar, but more narrow, doctrine of collateral estoppel, or issue preclusion, does apply.[1] We have explained that doctrine as follows:
"Collateral estoppel is a judicial doctrine which in general terms prevents identical parties from relitigating the same issues that have already been decided." Department of Health & Rehabilitative Services v. B.J.M., 656 So.2d 906, 910 (Fla.1995). Under Florida law, collateral *291 estoppel, or issue preclusion, applies when "the identical issue has been litigated between the same parties or their privies." Gentile v. Bauder, 718 So.2d 781, 783 (Fla.1998). In addition, the particular matter must be fully litigated and determined in a contest that results in a final decision of a court of competent jurisdiction. See B.J.M., 656 So.2d at 910.
City of Oldsmar v. State, 790 So.2d 1042, 1046 n. 4 (Fla.2001). Although collateral estoppel generally precludes relitigation of an issue in a subsequent but separate cause of action, its intent, which is to prevent parties from rearguing the same issues that have been decided between them, applies in the postconviction context. As explained above, under the principles of res judicata a defendant would be prohibited from filing any successive 3.800 motion on any issue that was or could have been raised. Collateral estoppel, on the other hand, only precludes a defendant from rearguing in a successive rule 3.800 motion the same issue argued in a prior motion.
This analysis is consistent with the application of rule 3.800 in the district courts of appeal. For example, in Smith v. State, 685 So.2d 912, 912 (Fla. 5th DCA 1996), the Fifth District considered "whether the defendant may obtain relief, based on a claim that he was not given proper gain time credit, by a successive rule 3.800 motion." The court concluded that "[w]hile it may be correct that rule 3.800 does not prohibit successive motions, we hold that where, as here, a defendant raises an issue under rule 3.800, the lower court denies relief and the defendant fails to appeal, he may not later raise the same issue in another rule 3.800 motion." Id. Accord Tisdol v. State, 823 So.2d 300, 301 (Fla. 3d DCA 2002); see also Jenkins v. State, 749 So.2d 527, 528 (Fla. 1st DCA 1999) (noting that a defendant may not raise the same illegal sentencing issue in successive postconviction motions); Price v. State, 692 So.2d 971, 971 (Fla. 2d DCA 1997) (noting that rule 3.800 "contains no proscription against the filing of successive motions" but that "a defendant is not entitled to successive review of a specific issue which has already been decided against him"). In barring the filing of successive repetitive 3.800 motions, these courts essentially have applied collateral estoppel principles.

V. Manifest Injustice

Our application of collateral estoppel principles does not end the analysis, either. We must still decide whether a manifest injustice exception exists in the context of collateral estoppel, and if it does, whether manifest injustice would prohibit application of that doctrine.
This Court has long recognized that res judicata will not be invoked where it would defeat the ends of justice. See deCancino v. E. Airlines, Inc., 283 So.2d 97, 98 (Fla.1973); Universal Constr. Co. v. City of Fort Lauderdale, 68 So.2d 366, 369 (Fla.1953). The law of the case doctrine also contains such an exception. See Strazzulla v. Hendrick, 177 So.2d 1, 4 (Fla.1965). We have found no Florida case holding that such an exception applies to collateral estoppel. Federal courts and other state courts, however, have held that the collateral estoppel doctrine does contain such a manifest injustice exception. See, e.g., Comm'r of Internal Revenue v. Sunnen, 333 U.S. 591, 599, 68 S.Ct. 715, 92 L.Ed. 898 (1948); Thompson v. Schweiker, 665 F.2d 936, 940 (9th Cir.1982); Tipler v. E.I. duPont deNemours & Co., 443 F.2d 125, 128 (6th Cir.1971); Dowling v. Finley Assocs., Inc., 248 Conn. 364, 727 A.2d 1245, 1249 n. 5 (1999); Kansas Pub. Employees Ret. Sys. v. Reimer & Koger Assocs., Inc., 262 Kan. 635, 941 P.2d 1321, 1333 (1997); State v. Harrison, 148 Wash.2d 550, 61 *292 P.3d 1104, 1109 (2003). We agree. We hold that collateral estoppel will not be invoked to bar relief where its application would result in a manifest injustice.
In light of this holding, we must now determine whether the application of collateral estoppel in this case creates a manifest injustice that can be determined from the face of the record. See Fla. R.Crim. P. 3.800(a) (stating that the motion must "affirmatively allege[ ] that the court records demonstrate on their face an entitlement to ... relief"). As noted above, McBride was sentenced as a habitual offender to concurrent thirty-year terms of imprisonment on each of three felonies. Only the habitual offender sentence for the life felony of attempted first-degree murder, however, is illegal. In light of the concurrent sentences of the same length McBride is serving as a habitual offender, applying collateral estoppel to his successive motion will not result in a manifest injustice. In fact, as the State notes, resentencing McBride for the life felony could very well result in an increase in his prison term. See § 775.082, Fla. Stat. (1989). Therefore, McBride's claim is barred.
Based on the foregoing, the trial court correctly denied McBride's successive rule 3.800 motion, which raised the identical claim raised in his earlier motion, the denial of which he did not appeal. The prior judgment on the merits is thus final with regard to all matters addressed by the trial court in that order. Accordingly, we quash the decision of the Fifth District Court of Appeal, and answer the certified question in the negative.
It is so ordered.
WELLS and QUINCE, JJ., and SHAW, Senior Justice, concur.
PARIENTE, J., concurs in result only with an opinion, in which ANSTEAD, C.J., concurs.
LEWIS, J., concurs in part and dissents in part with an opinion.
PARIENTE, J., concurring in result only.
Although the members of this Court agree that McBride is not entitled to sentence correction via his rule 3.800(a) motion, we diverge in our views of the law dictating this result. The majority rejects the doctrines of law of the case and res judicata, and instead applies collateral estoppel, recognizing a manifest injustice exception. Justice Lewis considers collateral estoppel inapplicable and asserts that res judicata is the proper legal principle, while also embracing a manifest injustice exception.
In my view, the reason for the struggle to make well-established legal principles fit into the rule 3.800(a) framework is because neither doctrine is suited to the unique jurisprudential concerns regarding illegal sentences and the specification in rule 3.800(a) that an illegal sentence may be challenged at any time. Instead, I conclude that we should quash the Fifth District decision reversing the trial court's denial of the rule 3.800(a) motion because McBride has not received an illegal sentence remediable under the rule.
Moreover, even assuming the doctrine of collateral estoppel bars a successive rule 3.800(a) claim based on the identical claim previously raised, it is essential that we clarify the precise definition of the manifest injustice exception to provide guidance to trial courts and appellate courts. In my view, unless the trial court could have imposed the same sentence or a more severe sentence absent the illegality, correction of an illegal sentence under rule 3.800(a) is necessary to prevent a manifest injustice.
*293 McBride's sentence is in accord with a plea agreement and is within the statutory maximum for a life felony. In Maddox v. State, 760 So.2d 89, 103 (Fla.2000), we reaffirmed our precedent "allowing defendants to agree through a plea bargain to a sentence not specifically authorized by statute or rule as long as the sentence does not exceed the statutory maximum." Cases in which we held that an unauthorized habitual offender sentence for a life felony could be rectified via rule 3.800(a) involved sentences imposed after trial and not as the result of a guilty or no contest plea. See Carter v. State, 786 So.2d 1173 (Fla.2001), quashing 704 So.2d 1068, 1069 (Fla. 5th DCA 1997) (defendant "tried and convicted"); Lamont v. State, 610 So.2d 435, 436, 439 (Fla.1992) (defendant "found guilty"; discussion of verdict form).
I do not endorse the propositions that either res judicata, which protects the finality of judgments, or collateral estoppel, which precludes relitigation of issues previously resolved, bars the correction of truly illegal sentences under rule 3.800(a). In fact, the very notion of rule 3.800(a) is that it allows the illegality of a sentence to be raised at any time after the judgment and sentence are finaleven though the challenge to the sentence could have been raised on direct appeal. The fact that a trial court may have in a given case erroneously rejected a postconviction claim of an illegal sentence brought by a defendant (who most likely is unrepresented) should not bar a valid challenge to a truly illegal sentence in a rule 3.800 proceeding. Indeed, past experience shows that even valid challenges to sentences may be rejected and the denial of the motion affirmed per curiam without opinion, especially in areas where the law is in transition. See, e.g., Dixon v. State, 730 So.2d 265, 268 n. 4 (Fla.1999) (noting disparate treatment of appeals from summary denials of postconviction motions seeking retroactive application of Hale v. State, 630 So.2d 521 (Fla. 1993)).
Application of either res judicata or collateral estoppel to rule 3.800 proceedings can also frustrate pro se litigants whose meritorious claims have been previously derailed on procedural grounds. For example, in Ford v. State, 667 So.2d 455 (Fla. 4th DCA 1996), the trial court denied, on res judicata grounds, a successive rule 3.800(a) motion seeking presentence jail credit after the appeal of the denial of the previous motion was dismissed as untimely. To its credit, the State acknowledged on appeal that the second motion was not barred. Id. at 455. Pro se defendants who are ignorant of the fact that rule 3.800 does not authorize a motion for rehearing often file for rehearing and then find that their appeals have been dismissed as untimely. See, e.g., Mincey v. State, 789 So.2d 492 (Fla. 1st DCA 2001).
While I would never condone the successive filing of nonmeritorious motions, we should not bar reconsideration of a meritorious claim under rule 3.800 that the sentence is illegal. I thus do not agree with the majority that consideration of a successive motion that a sentence is illegal should turn on the existence of a "manifest injustice" exception. See majority op. at 291-92. Rather, in my view the mechanism for correcting illegal sentences provided by rule 3.800(a) should be limited only by the provisos that the error appear on the face of the record and that the sentence itself be illegal as measured by statute, rule, or case law.
As we noted in Maddox, "[t]he extraordinary provision made for remedying illegal sentences evidences the utmost importance of correcting such errors, even at the expense of legal principles that might preclude relief from trial court errors of less consequence." 760 So.2d at 101. We recognized *294 that "clearly the class of errors that constitute an `illegal' sentence that can be raised for the first time in a postconviction motion decades after a sentence becomes final is a narrower class of errors than those termed `fundamental' errors that can be raised on direct appeal even though unpreserved." Id. at 100 n. 8. We observed in Maddox that the State recognizes that it "has no interest in any defendant serving a sentence that is longer than the sentence authorized by law." Id. at 99. Indeed, the entire justice system certainly has an interest in ensuring that the defendant is not incarcerated longer than is authorized by law, or under illegal terms. The courts have an obligation to correct any such error whenever it is brought to their attention.
In accord with the principles espoused in Maddox, we held in Bover v. State, 797 So.2d 1246 (Fla.2001), that a defendant who pled no contest to fifteen third-degree felonies for a ten-year habitual offender sentence could challenge the sentence via rule 3.800(a) on grounds that his prior offenses did not qualify him for habitualization. Absent qualification as a habitual offender, the maximum sentence Bover could have received for each third-degree felony was five years in prison. We noted that pursuant to the recommended guidelines sentence of life, Bover could have received fifteen consecutive five-year sentences, but we declined to address the effect of the plea agreement on the claim that he lacked the prior felonies necessary for habitualization because neither party raised the issue. Id. at 1251 n. 7.
In this case, however, the existence of the plea agreement should not be ignored, because it resulted in three concurrent thirty-year habitual offender sentences, one of which was on the attempted murder count at issue here. Although a habitual offender sentence was not authorized for a life felony, the thirty-year sentence on this count is within the applicable statutory maximum of a "term of years not exceeding 40 years" for a life felony. § 775.082(3)(a), Fla. Stat. (1989). The plea agreement and resulting sentence within the statutory maximum bring this case within the class of cases contemplated by our approval in Maddox of agreements to sentences that are not specifically authorized by statute but do not exceed the statutory maximum. See 760 So.2d at 103. Therefore, consistent with Maddox, I would hold that the imposition of an unauthorized habitual offender sentence can be corrected via rule 3.800(a), except in those situations in which the defendant has agreed through a knowing and voluntary plea to a sentence that does not exceed the maximum penalty authorized for the offense.
Because McBride agreed to his unauthorized sentence as part of a plea and the thirty-year sentence does not exceed the maximum penalty authorized for a life felony under section 775.082(3)(a), he is not entitled to relief via rule 3.800(a). However, because the certified question does not draw a distinction for unauthorized habitual offender sentences imposed pursuant to plea, I do not concur in the majority's answer to the certified question.
ANSTEAD, C.J., concurs.
LEWIS, J., concurring in part and dissenting in part.
I concur in the result only with regard to the issues addressed by the majority today, but I cannot accept the creative reasoning adopted by the Court without authority in its opinion. I must dissent from the majority's unprecedented decision to ignore age-old precedent and rewrite Florida law to apply the doctrine of collateral estoppel to the facts of the present case. In my view, the majority ignores *295 extraordinarily well-settled facets of Florida's common law, and simply creates new law, without any deference to, or consideration of, the prior opinions of this Court. Because I can find no existing authority which supports the inordinate and rash action taken today by the Court to totally eliminate the clear legal distinction between collateral estoppel and res judicata, while years of precedent counsel against application of the doctrine of collateral estoppel to the instant case, I dissent.
The doctrines of res judicata and collateral estoppel, and their very separate and distinct nature, are age old. Indeed, each doctrine "was recognized by the Roman law, and later by the English courts, and it is said that [each] pervades, not only our own, but all other, systems of jurisprudence to this day, and has become a rule of universal law." Cragin v. Ocean & Lake Realty Co., 101 Fla. 1324, 133 So. 569, 571 (1931); see also Coral Realty Co. v. Peacock Holding Co., 103 Fla. 916, 138 So. 622, 624 (1931). Central to the law regarding the preclusive effects of prior judgments, and critical in the present action, are the discrete and important differences between the doctrines of res judicata and collateral estoppel.
As long as the doctrines have been part of Florida law, a matter has qualified for the application of res judicata, thereby barring further litigation on a relevant claim, only where there is "a concurrence of identity in the thing sued for, identity of cause of action, identity of persons and parties to the action, and identity of quality in persons for or against whom claim is made." McGregor v. Provident Trust Co. of Philadelphia, 119 Fla. 718, 162 So. 323, 328 (1935); see also Palm AFC Holdings, Inc. v. Palm Beach County, 807 So.2d 703, 704 (Fla. 4th DCA 2002); State Dep't of Revenue v. Ferguson, 673 So.2d 920, 922 (Fla. 2d DCA 1996). I suggest that there is no question that the doctrine of res judicata applies in the present case. Here, McBride's initial and subsequent rule 3.800 motions contained recitations of identical facts, raised identical claims, involved identical parties, and were, in both substance and form, identical actions.
The pertinent, well-recognized difference between the doctrines of res judicata and collateral estoppel is that while res judicata requires identity of the cause of action, see McGregor, this Court has always reserved collateral estoppel only for the situation in which a party attempts to rely upon the judgment entered or determination made in a prior and unrelated action. Indeed, the decisions in which this Court has limited application of collateral estoppel to "those cases wherein the parties are the same in the second suit as in the former action but the causes of action are different," Yovan v. Burdine's, 81 So.2d 555, 557 (Fla.1955), are myriad. Probably the most succinct and direct expression of this principle is found in this Court's statement in Universal Construction Co. v. City of Fort Lauderdale, 68 So.2d 366 (Fla.1953): "Estoppel by judgment is applicable only in those cases wherein the parties are the same in the second suit as in the former but the cause of action is different." Id. at 369 (emphasis supplied). There are multiple Florida decisions which echo this conclusion.[2]
*296 Because the majority chooses to simply ignore overwhelming authority which precludes the application of collateral estoppel to the facts of the instant case due to the simple, obvious fact that the cause of action before this Court is absolutely identical to that filed originally by McBride in 2000, and refuses to apply the correct doctrine of res judicata, I dissent. I can find absolutely no authority which supports the course of action taken by the majority today, and the majority provides no authority for applying collateral estoppel and obliterating the well-defined legal distinction between this doctrine and res judicata. With this decision the Court rewrites the law of collateral estoppel, applying the doctrine to a subsequent, identical action in contravention of decades of Florida precedent. I refuse to be part of a unilateral and baseless revision of the law which changes the very core of the doctrine of collateral estoppel; therefore, I dissent from that portion of the majority opinion applying collateral estoppel to the present case, and concur only in the result. Collateral estoppel now has the identical components which have historically existed only for application of res judicata.
NOTES
[1] Both res judicata and collateral estoppel apply in criminal and civil contexts. See, e.g., Thompson v. Crawford, 479 So.2d 169 (Fla. 3d DCA 1985) (noting that the doctrine of res judicata is as applicable to judgments in criminal prosecutions as to civil cases); Brown v. State, 397 So.2d 320, 322 (Fla. 2d DCA 1981) (holding that denial of motions to suppress in a bookstore robbery case was proper under a theory of collateral estoppel where the same witness identification was the subject of prior suppression motions denied in a market robbery case).
[2] See Shearn v. Orlando Funeral Home, Inc., 88 So.2d 591, 594 (Fla.1956); Gordon v. Gordon, 59 So.2d 40, 44 (Fla.1952); Green v. State Dep't of Health & Rehabilitative Servs., 412 So.2d 413, 414 (Fla. 3d DCA 1982) ("Where the causes of action are different, the doctrine of estoppel by judgment comes into play ....") (quoting 32 Fla. Jur.2d, Judgments and Decrees, § 116); Clean Water, Inc. v. State Dep't of Envtl. Reg., 402 So.2d 456, 458 (Fla. 1st DCA 1981) ("The doctrine of res judicata bars relitigation of the same cause of action between the same parties and collateral estoppel bars relitigation of the same issues between the same parties in a different cause of action.").