PARIENTE, J.,
concurring in part and dissenting in part.
I commend the extensive work that has been done by the members of the various committees, who over many years have endeavored to improve the postconviction process. I write to address the amendments to the Rules of Criminal Procedure that the Court now adopts and to explain my view that along with these rule changes, the criminal justice system must give serious consideration to other innovations, such as the use of standard forms and evolving technology, to further improve the postconviction process.
I. The New Amendments
With respect to the amendments adopted by the Court today, I agree with the majority’s decision, except as follows. First, as to newly adopted rule 3.801 that limits the time for correction of jail credit to one year after the sentence becomes final, although I would consider some limitations on the filing of successive motions, I continue to adhere to the view that a defendant should never be required to serve any more time in prison than he or she is legally required to serve. As I stated in my concurring in result only opinion in State v. McBride, this Court has observed “that the State recognizes that it ‘has no interest in any defendant serving a sentence that is longer than the sentence authorized by law.’ ” 848 So.2d 287, 294 (Fla.2003) (Pariente, J., concurring in result only) (quoting Maddox v. State, 760 So.2d 89, 99 (Fla.2000)). Indeed, I ex *741 plained in McBride that “the entire justice system certainly has an interest in ensuring that the defendant is not incarcerated longer than is authorized by law, or under illegal terms. The courts have an obligation to correct any such error whenever it is brought to their attention.” Id. (Pariente, J., concurring in result only).
In this regard, a sentence not granting “proper credit for time served” was deemed so important that it was specifically mentioned in rule 3.800(a) as an error that could be corrected at any time. Fla. R.Crim. P. 3.800(a). As this Court held in State v. Mancino:
[S]ince a defendant is entitled to credit for time served as a matter of law, “common fairness, if not due process, requires that the State concede its error and correct the sentence ‘at any time.’ ” For that reason, a prisoner should ordinarily first seek prompt administrative relief in the corrections system before going to the circuit court for relief under rule 3.800(a), mandamus or habeas corpus. Of course, the trial court and counsel for the State and the defendant should be alert to see that provision is always made in sentencing for a defendant to receive credit for all time already served.
714 So.2d 429, 433 (Fla.1998) (emphasis supplied) (citation omitted) (quoting Chojnowski v. State, 705 So.2d 915, 918 (Fla.2d DCA 1997) (Altenbernd, J., concurring specially)).
I agree with the comments filed by the Florida Public Defender Association (FPDA) that the special procedure for jail credit adopted through rule 3.801 is “unnecessarily restrictive” and that it would make more sense to instead utilize rule 3.800(b) and rule 3.850 to correct these errors. As the FPDA also points out, newly adopted rule 3.801 eliminates a court’s power after one year to correct errors even obvious on the face of the record and apparently eliminates the “manifest injustice” exception to litigating an otherwise barred claim. In addition, valid concerns have been raised as to whether this new rule addresses only county jail credit or all credit issues.
Further, the requirement in rule 3.801 of a one-year time limitation on the filing of a motion to correct jail credit from the time the sentence becomes final means that these motions must now be filed sooner than motions to vacate, set aside, or correct a sentence under rule 3.850. At the very least, I believe that the time for filing a motion to correct a sentence due to improperly calculated jail credit should be expanded to correspond with the time limitations in rule 3.850.
Not only is jail credit now removed from the scope of rule 3.800(a), but the pleading requirements of newly enacted rule 3.801 place the burden entirely on the defendant, who will most likely be unrepresented at this stage of the proceedings. In my view, the simplest solution to the problem sought to be remedied through the adoption of rule 3.801 would be to have a procedure at the time of sentencing to ensure the accurate calculation of credit for time served. Advancements in technology certainly make this an achievable goal.
With the adoption of rule 3.801 and the strict time limits imposed, defense counsel and prosecutors, as well as the trial courts, should take steps to ensure that the calculation of jail credit is accurate at the time of sentencing. Indeed, such an approach has always been the best way to limit subsequent challenges based on jail credit and to ensure the accuracy of the sentence imposed. Specifically, Judge Altenbernd of the Second District Court of Appeal brought this issue into focus over fifteen years ago:
*742 Many, if not most, jail credit issues do not appear on the face of the record available to the trial court. Either the trial court does not have access to the jail records described by the prisoner or the prisoner is claiming a factual error in those records. There is no valid reason to allow such factual issues to be raised at any time in an unsworn motion.
Thus, rule 3.850 currently provides the best procedure for a prisoner to resolve jail credit issues because it allows for a sworn pleading and the orderly resolution of factual disputes relating to sentencing. These motions, however, cannot be filed during the pendency of an appeal. At least in this district, with our public defender’s backlog, unless the defendant chooses to forego his or her constitutional right to appeal, it will be difficult for the trial court to resolve a factual issue relating to jail credit before the prisoner fully serves any sentence that is less than 3 years’ imprisonment. Even if the trial court manages to reach the issue in time, a delayed evidentiary hearing is a highly inefficient method to resolve jail credit problems.
I do not profess to be an expert on the best methods to record and calculate jail credit. I do know, however, that the Department of Corrections already calculates prison credit when a trial judge checks the box for prison credit on the written sentence. In this computer age, the legislature could authorize the Department to obtain statewide records for use in all cases. I believe the trial court should at least have the option of allowing the Department to calculate jail credit in complex cases. This certainly would be better than forcing trial judges to scribble calculations while reciting “thirty days hath September” at every sentencing hearing.
If it is not feasible for the legislature to delegate this task to the Department, then the supreme court should consider the creation of a specific rule of procedure to allow these matters to be processed in the trial courts and reviewed on appeal in a timely and efficient manner.
Chojnowski, 705 So.2d at 918-19 (Altenbernd, J., concurring specially) (footnotes omitted). I am simply not convinced that the new procedure for jail credit the Court adopts today will allow these issues to be processed in a timely and efficient manner, or that rule 3.801 adequately preserves a defendant’s right to never have to serve more time in prison than legally required.
Second, as to the change to rule 3.850(c) that requires the attachment of an affidavit for all newly discovered evidence claims, although I agree with the requirement, I am also concerned that there may be real limits on an unrepresented prisoner’s ability to obtain a properly executed affidavit. I therefore urge the trial courts to liberally construe the alternative provision that if the affidavit is not attached to the motion, “the defendant shall provide an explanation why the required affidavit could not be obtained.”
Third, as to the changes to current subdivision rule 3.850(d), which is now designated as subdivision (f), I concur with the adoption of this substantially amended subdivision with the express understanding that the amended subdivision codifies existing law and is not intended to change the law, as set forth in the commentary to the 2012 amendment. Finally, the same caveat applies to the subdivision now designated as rule 3.850(g).
II. Broader Considerations
As to the larger picture, the goal of both the committee members and this Court has been to streamline the postconviction process and to limit the filing of successive motions, while concomitantly preserving *743 the rights of convicted defendants. Against this backdrop is the reality that the vast majority of those prisoners filing postconviction motions are unrepresented and, because of limitations on access to computers and typewriters, the majority of the petitions this Court and other courts receive are handwritten — and oftentimes even illegible.
History and experience reveal that the majority of the pro se filings in postconviction proceedings, appeals, and original writs at all levels of the court system, including the Florida Supreme Court, are without merit. A number of these filings are successive and frivolous, representing an abuse of the process. The further truth of the matter is that as defendants in Florida have increasingly been subject to lengthier prison terms, including mandatory mínimums, courts have seen an increase in the number of postconviction filings.
The amount of postconviction filings received in each of Florida’s five district courts of appeal, for instance, has increased dramatically over the last two decades. In the fiscal year 1992-93, the First District Court of Appeal received 358 post-conviction filings and the Second District Court of Appeal received 650. By 2011-12, however, those numbers had essentially tripled, with the First District receiving 1,178 postconviction filings and the Second District receiving a district court high of 1,825.
This same pattern is evident in the number of circuit court filings for postconviction relief. Individual circuits have almost universally experienced an increase in posteonviction filings over the last decade alone. In the fiscal year 2002-03, Florida’s twenty circuits received a total of 10,005 motions for postconviction relief. In 2011-12, the circuit courts received almost twice as many postconviction filings — 18,681.
Despite this objective reality, however, we must always remember another essential truth about our system of justice: that, among the avalanche of postconviction filings, there always exists the possibility of a defendant who in fact is entitled to relief, either from his or her conviction or from the sentence — including the possibility of actual innocence or credible newly discovered evidence that sheds doubt on the validity of the conviction. Thus, I am convinced that, on the front end, mandating and adopting standard forms for prisoners to use and exploring electronic filing of postconviction petitions would be two significant steps toward our ultimate goal of reforming an “unwieldy postconviction process” while achieving a “balance between the rights of the convicted defendants and the appropriate use of court resources.” Majority op. at 3. I believe that standard forms and electronic filing would increase efficiency by enabling courts to track post-conviction filings by individual prisoners, more easily ensuring that the process is not being abused and that multiple levels of courts are not reviewing the same filings, and reducing the possibility that a petition with merit is overlooked in the avalanche of pro se filings courts now receive.
Because the ultimate issue is the efficient, effective, timely, and fair administration of justice, I also note that, in the 2006 Report of the Postconviction Rules Work-group, the Committee consisting of trial and appellate court judges observed that the addition of forms for use by prisoners, as well as the ability to handle these filings electronically, would be two ways that the judicial system could balance efficiency with fairness. As set forth in the report authored by Judge Altenbernd:
Just as a more extensive collection of form motions and orders was required to assist pro se litigants in family law *744 cases, the Workgroup believes that more extensive forms are needed to assist the litigants and the courts in processing postconviction proceedings.
It is often cumbersome and time-consuming to amend rules of procedures. Forms can be more readily adjusted. The law of postconviction is frequently affected by an issue that generates many motions for a short period of time....
There is little question that a significant percentage of all motions filed by prisoners have little or no merit. The typical prisoner, however, is untrained in the law, given no adequate form pleadings, and is represented, at best, by other prisoners with limited paralegal training or experience. It is often difficult or impossible to distinguish between a prisoner who is ignorant of the law and one who is filing motions in bad faith. The fact that a prisoner often has limited education and may suffer from mental illness makes this process even more difficult.
This state wisely has a constitutional provision that guarantees “every person” access to the courts. Art. I, § 21, Fla. Const. Nevertheless, the courts must occasionally take steps to sanction or control people who abuse this constitutional right. Within the Workgroup, it was obvious that the members who deal directly with the prisoners in the trial courts feel a strong need to have the power of sanction. Those who deal indirectly with the prisoners in the appellate court are more skeptical about the efficacy of sanctions in this context. It remains at least debatable whether the additional judicial process required in the trial courts to impose sanctions and the inevitable appeals that would arise from additional sanction orders might create costs that outweigh the benefit of sanctions.

If the rules were changed and more forms were created to simplify the legal tasks expected of prisoners, it would be easier to identify the prisoners who should be sanctioned. ...

Because prisoners have essentially no access to computer technology, their motions cannot currently be filed electronically. The courts must serve orders on prisoners by standard mail. The requirement that the trial court attach court records to refute conclusively the allegations in the motion results in massive copying. This is an expensive and inefficient way to process postconviction motions. It was workable and necessary in 1988, but it is no longer the best method to manage this case load.
The Workgroup is making no recommendation in Appendix A to solve this problem, in part, because the technology required to solve this problem is beyond our expertise and, in part, because the Department of Corrections would need to be a willing partner in solving this problem. It should be emphasized that appellate proceedings filed by prisoners are now approximately one-third of all filings in the district courts. An electronic filing system in the trial courts and appellate courts cannot achieve maximum efficiency until filings from prisoners are received electronically.
Comm, on Performance & Accountability, Report of the Postconviction Rules Work-group 10-13 (Sept. 1, 2006) (on file with Court Adm’r, Fla. Sup.Ct.) (emphasis supplied).
The observations made by the Postcon-viction Rules Workgroup in 2006 are as true today as they were almost seven years ago when the report was issued. Without improving efficiency in the process, including requiring prisoners to file *745 postconviction motions electronically through the use of specified forms, as well as an examination of best practices throughout the circuits, including the entry of a written sentence on the day it is pronounced, the judicial system will continue to struggle with the enormous workload and concomitant responsibility placed on all of those who are committed to the fair and efficient administration of justice.[9] I urge the Department of Corrections, together with the court system, to explore ways in which electronic filing could lessen the workload and increase efficiency for all those involved in this process.
III. Conclusion
Accordingly, for the reasons stated, I concur in part and dissent in part with respect to the Court’s adoption of these amendments to the Rules of Criminal Procedure. In addition, I thank the committee members for their diligent work to improve the postconviction process and stress that the broader considerations I have outlined here should remain a focus of all those who seek fairness and efficiency in our criminal justice system.

. A further examination might be helpful in analyzing whether any of the reasons that have given rise to the massive increase in postconviction filings could be influenced by local best practices. For example, an analysis of the 18,681 filings of motions for postcon-viction relief in the circuit courts in the fiscal year 2011-12 revealed a huge disparity in the filings among the various circuits. The Eleventh Circuit had a high among the twenty circuits of 5,313 filings, with the Seventeenth Circuit coming in a close second at 4,840 filings. Other large circuits like the Ninth, Thirteenth, and Fifteenth had only, respectively, 475, 412, and 606 filings in that same time period. There may be easily explainable reasons for the glaring disparities between these circuits, but the large variance is certainly reason for further study.