[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10191
Non-Argument Calendar
_____

D.C. Docket No. 3:14-cv-01501-MMH-MCR

ROSANA BOULHOSA NASSAR,

Plaintiff-Appellant,

versus

EDUARDO BOULHOSA NASSAR,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida
_____

(September 18, 2017)

Before TJOFLAT, WILLIAM PRYOR and FAY, Circuit Judges.

PER CURIAM:

Rosana Boulhosa Nassar, pro se, appeals the dismissal of her amended complaint and the denial of her motion for leave to file a second amended complaint.  We affirm.

## I. BACKGROUND

### A. Underlying Facts

According to Nassar's amended complaint, Eduardo Boulhosa Nassar ("Eduardo"), a Brazilian citizen and Nassar's older brother, sexually assaulted her when she was a child.  When Nassar was an adolescent, Eduardo also violated her privacy by entering her gynecologist's examination room without permission while she was being examined.  In 1998, "to recover from her childhood trauma," Nassar wrote and published a book in Portuguese titled (as translated) "The Freeing Power of Speech," in which she detailed "the abuse [Eduardo] committed against her."  R. at 1988-89.

Since the publication of Nassar's book, Eduardo has published false statements online regarding what she had written about him.  Eduardo also accused her of having serious psychological problems, a personality disorder, and paranoia on those websites, which she alleged could still be viewed through internet archives.  Eduardo purchased the domain names "www.rosananassar.com" and "www.newglobalpublishing.net" (a reference to Nassar's publishing business, New Global Publishing); he also published false statements on these websites.

2

Since 2005, Eduardo has hired 35 private investigators and security officers "to stalk, investigate, place . . . under surveillance, guard, protect, recover and follow" Nassar.  R. at 1990.  Nassar also received an anonymous text message that read, "I am gonna kill u!  Don't give anybody my cell number," which she perceived to be a threat and, based on the area code, has concluded was sent by Eduardo.  R. at 2004.  Nassar's publishing business has suffered as a result of Eduardo's actions because Nassar had to spend "most of her time investigating the investigators and security officers who [Eduardo] has been hiring."  R. at 1990.

## B. Prior State-Court Proceedings

In 2012, Eduardo filed a complaint in Florida state court against Nassar, alleging claims of defamation and intentional infliction of severe emotional distress.[1]  Eduardo claimed that Nassar published false allegations on the internet that he had sexually abused and tortured her by placing her under surveillance. Nassar filed a counterclaim against Eduardo; Eduardo moved to dismiss the counterclaim based, in part, on lack of personal jurisdiction over him.  Nassar filed an amended counterclaim; Eduardo again moved to dismiss.  The state court granted Eduardo's motion to dismiss and granted Nassar leave to amend.

Nassar filed a third amended counterclaim.  She alleged intellectual property damage based on Eduardo's purchase of the domain names associated with her and

---

[1] The district court took judicial notice of this background information from the state court.  R. at 3013 n.2.

3

her business, defamation based on Eduardo's online comments, stalking based on Eduardo's alleged hiring of private investigators and security officers, and intentional infliction of severe emotional distress based on stalking. Eduardo moved to dismiss the counterclaims with prejudice and noted that the claims did not arise out of the same facts as his claims, so they might constitute compulsory counterclaims and thus lack jurisdiction. Eduardo mainly argued that Nassar had failed to allege a short and plain statement of the ultimate facts, Nassar's defamation claim was time-barred, Nassar failed to state a claim for defamation, and Florida law does not recognize a claim for intellectual property damage. The state court granted the motion to dismiss with prejudice for the reasons contained in Eduardo's motion. Eduardo later dismissed his suit without prejudice.

## C. Nassar's Federal Case

In March 2016, Nassar filed an amended complaint against Eduardo in the Middle District of Florida, alleging claims of cyberpiracy and cybersquatting in connection with internet domain names, in violation of 15 U.S.C. § 1125(d), defamation, and intentional infliction of severe emotional distress. Eduardo filed a motion to dismiss, arguing the amended complaint was barred by res judicata because Nassar previously had filed a counterclaim in state court that was dismissed with prejudice that had raised nearly identical allegations and requests for relief based on the same factual predicate. He also argued the statute of

4

limitations barred her defamation claim and the complaint failed to allege the elements of a claim for intentional infliction of severe emotional distress.

Nassar subsequently filed a motion for leave to file a second amended complaint. She argued that the second amended complaint would resolve any doubt as to the legal sufficiency of her allegations, contain more allegations of the incidents of stalking, eliminate the defamation claim, and add a claim of cyberpiracy and invasion of privacy. She also sought leave to amend to include new evidence that was discovered after Eduardo's former attorney disclosed that he had conducted surveillance on Nassar on behalf of Eduardo. The magistrate judge denied her motion for leave to file a second amended complaint without prejudice. The magistrate judge determined that while Nassar had demonstrated good cause for filing the motion two months after the deadline to amend pleadings, Nassar could not be allowed to file her proposed second amended complaint because it did not comply with Federal Rules of Civil Procedure 8 and 10. Nassar then filed a renewed motion for leave to file a second amended complaint.

After taking judicial notice of the state-court proceedings, the district court determined that Nassar's suit was barred by res judicata. The court concluded the identity of the thing sued for was the same in the state-court action and the current action, the identity of the parties was the same, and the parties were suing and being sued in the same capacity. Additionally, the court determined that the state

5

court's dismissal was a final judgment on the merits and, because Eduardo voluntarily dismissed his case, Nassar's counterclaims were final and appealable. The court concluded that the state court was a court of competent jurisdiction because Eduardo impliedly consented to personal jurisdiction and that Nassar's claims were sufficient to support that the actions arose from Eduardo's alleged commission of tortious acts in Florida, satisfying Florida's long-arm statute.

The district court also denied Nassar's motion to amend her complaint. The court determined that any allegations of stalking that predated 2014 necessarily would have been encompassed in Nassar's counterclaim and amending would be futile. To the extent that Nassar included incidents that postdated the filing of her third amended state-court counterclaim, the court determined that her claims would not be barred by res judicata; but the court declined to permit Nassar to supplement her pleadings because it would not promote the efficient administration of justice under the totality of the circumstances. The court noted that none of the newly alleged incidents occurred after she filed her amended complaint; Nassar had unreasonably delayed in requesting leave to supplement her pleading with those allegations and allowing her to do so would unduly delay the proceedings.

On appeal, Nassar argues that the district court erred by dismissing her complaint based on res judicata because the Florida state court dismissed her complaint for lack of personal jurisdiction rather than on the merits and that the

6

district court erred by failing to consider the merits of her claims.  Nassar also argues that the district court erred by denying her leave to file a second amended complaint because her claims were based on newly discovered evidence.

## II. DISCUSSION

### A. Motion to Dismiss

We review de novo the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Leib v. Hillsborough Cty. Pub. Transp. Comm'n*, 558 F.3d 1301, 1305 (11th Cir. 2009).  We also review de novo the district court's application of res judicata.  *Griswold v. County of Hillsborough*, 598 F.3d 1289, 1292 (11th Cir. 2010).  Although we read briefs filed by pro se litigants liberally, issues not briefed on appeal by a pro se litigant are deemed abandoned.  *Timson v. Sampson*, 518 F.3d 870, 874 (11th Cir. 2008).

When we are asked to give res judicata effect to a state-court judgment, we must apply the res judicata principles of the state whose decision is set up as a bar to further litigation.  *Kizzire v. Baptist Health Sys., Inc.*, 441 F.3d 1306, 1308 (11th Cir. 2006).  Under Florida law, res judicata applies where there is (1) identity of the thing sued for, (2) identity of the cause of action, (3) identity of the persons and parties to the action, (4) identity of the quality or capacity of the person for or

against whom the claim is made, and (5) the original claim was disposed on the merits. *Lozman v. City of Riviera Beach*, 713 F.3d 1066, 1074 (11th Cir. 2013). A judgment on the merits prohibits not only relitigation of claims previously raised but also the litigation of claims that could have been raised. *State v. McBride*, 848 So. 2d 287, 290 (Fla. 2003). Florida's claim-preclusion law defines identity of causes of action as causes sharing similar facts essential to the maintenance of both actions—that is, the claims must be substantially the same. *See Amey, Inc. v. Gulf Abstract & Title, Inc.*, 758 F.2d 1486, 1510 (11th Cir. 1985).

First, Nassar does not challenge on appeal the district court's determination that the identity of the thing sued for, the identity of the persons and parties to the action, the identity of the causes of action, and the identity of the quality or capacity of the person for or against whom the claim was made are the same in her federal action as they were in state court. Nassar therefore has abandoned any argument as to those issues on appeal. *See Timson*, 518 F.3d at 874.

According to the state-court order granting Eduardo's motion to dismiss Nassar's third amended counterclaim, the court granted the motion for the reasons included in the motion to dismiss. Although Eduardo made passing reference to the fact that Nassar's counterclaims might constitute compulsory counterclaims that did not result in personal jurisdiction, this reference was one sentence in a seven-page motion to dismiss. Because the majority of his motion focused on the

8

dismissal of Nassar's counterclaims based on her failure to state a claim and the claims being time barred, it is clear that the state court, by adopting Eduardo's reasoning, was dismissing her counterclaims with prejudice. This is further supported by the fact that, in its judgment dismissing the counterclaims, the state court specified that Nassar would not be permitted to further amend.

Moreover, under Florida law, an involuntary dismissal operates as an adjudication on the merits, unless the order otherwise specifies or the dismissal was for lack of jurisdiction, improper venue, or for lack of an indispensable party. Fla. R. Civ. P. 1.420(b). This provision applies to dismissal of any counterclaim. Fla. R. Civ. P. 1.420(c). Here, because the state court did not explicitly dismiss Nassar's counterclaims for lack of jurisdiction and the order did not otherwise specify that it was dismissing without prejudice, the state court's involuntary dismissal of her claims operated as an adjudication on the merits. *See* Fla. R. Civ. P. 1.420(b), (c). Accordingly, the district court properly concluded that the state-court order disposed of Nassar's claims on the merits.

Finally, Nassar's argument that the district court erred by only considering the merits of one of her claims is unavailing. The court was not required to determine the merits of her claims because it determined that they were barred by res judicata. While the court considered the merits of Nassar's claim that Eduardo sent her a threatening text message to the extent it could be construed as a new

9

claim not barred by res judicata, it found Nassar misread the telephone number and the message came from the United States and not Brazil.  Furthermore, even assuming that the text message was sent from Eduardo, the claim is still barred by res judicata.  Although Nassar did not include this specific allegation in her state-court counterclaim, this allegation was provided in her current complaint to support the stalking allegations as part of her claim for intentional infliction of emotional distress.  Therefore, this claim is part of the same factual basis as her state-court claim for intentional infliction of severe emotional distress and is barred by res judicata.  *See Amey*, 758 F.2d at 1510.

## B. Leave to Amend

While we review the denial of leave to amend the complaint for abuse of discretion, a legal determination that amendment to the complaint would be futile is reviewed de novo.  *Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007).  Even after the time has expired for amending a complaint as of right under Federal Rule of Civil Procedure 15(a)(1), a court should give leave to amend freely "when justice so requires."  Fed. R. Civ. P. 15(a)(2).  Generally, a party must be given at least one opportunity to amend before the district court dismisses the complaint.  *Corsello v. Lincare, Inc.*, 428 F.3d 1008, 1014 (11th Cir. 2005).  Pro se pleadings are held to an even less stringent standard than pleadings drafted by attorneys.  *Tannenbaum v. United States*, 148 F.3d 1262, 1263 (11th Cir. 1998).  However, a

10

district court need not allow an opportunity to amend if any amendment would be futile. *See Cockrell*, 510 F.3d at 1310 ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed . . . .").

Although Nassar raised new claims for invasion of privacy and cyberpiracy, the factual basis for the allegations that occurred prior to the third amended counterclaim arose from the same factual basis and could have been raised in the state-court action. *See McBride*, 848 So. 2d at 290 (recognizing that res judicata "prohibits not only relitigation of claims raised but also the litigation of claims *that could have been raised* in the prior action"). Additionally, the proposed amendment to her complaint based on the allegedly "new" evidence would be futile because the evidence was not actually new. The alleged discovery of new evidence regarding the domain names does not change the outcome that her claims are barred by res judicata because they previously were raised in state court. As to the allegedly new evidence about Eduardo's stalking from disclosures made by his former attorney, her allegations fail to demonstrate that these alleged incidents occurred after she filed her state-court counterclaims and were not part of the same factual basis. Accordingly, the district court did not err in determining that amending her complaint on these grounds would be futile.

Further, Nassar did not show that the interests of justice required leave to amend her complaint when the district court already had allowed her to amend her

11

complaint once and she could have raised these allegations in her first amended complaint. *See* Fed. R. Civ. P. 15(a)(2). The district court therefore did not abuse its discretion in denying Nassar leave to amend her complaint to include allegations that were not barred by res judicata.

**AFFIRMED.**