DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**FEDERAL NATIONAL MORTGAGE ASSOCIATION,**
Appellant,

v.

**MAXIMO R. TRINIDAD** and **THERESA A. TRINIDAD,**
Appellees.

No. 4D22-415

[March 15, 2023]

Appeal from the Circuit Court for the Nineteenth Judicial Circuit, St. Lucie County; Elizabeth Metzger, Judge; L.T. Case No. 562018CA000748HC.

Nancy M. Wallace of Akerman LLP, Tallahassee, and William P. Heller of Akerman LLP, Fort Lauderdale, for appellant.

Michael McCormick, Jr. and Michael Vater of The Ticktin Law Group, Deerfield Beach, for appellees.

WARNER, J.

Appellant, Federal National Mortgage Association ("Fannie Mae"), appeals a final judgment entered in favor of appellees, Maximo and Theresa Trinidad, in a mortgage foreclosure based upon a lost note. The trial court determined that Fannie Mae had not re-established the lost note because, in a prior final judgment for appellees, Fannie Mae was not entitled to enforce the note. Because the court erroneously relied on collateral estoppel of the prior judgment, we reverse.

## Facts

On November 14, 2007, appellees executed a promissory note to DSK Enterprises for a $260,900 loan secured by a mortgage encumbering appellees' property. Appellees stopped making payments on their mortgage in 2009. In 2012, Fannie Mae filed a foreclosure action against appellees and Fannie Mae's counsel filed the original note with the court as a trial exhibit.

The first trial resulted in a judgment for appellees, because the court found that Fannie Mae lacked standing based on the note's allonges. One allonge was from DSK to First Horizons Home Loans. The second allonge was from First Horizons to MetLife. The note also contained an indorsement in blank from MetLife. The court found that the allonge from DSK was dated November 9, 2007.[1] Because that allonge predated the note, the court found DSK did not have authority to transfer the note to First Horizon, making the subsequent allonges legally insufficient and invalid. Fannie Mae did not appeal the final judgment.

Almost three years later, Fannie Mae filed a motion to release the original note to its representative. The court granted Fannie Mae's motion, and the order reflects the clerk sent the note to Fannie Mae's counsel, Choice Legal. However, Choice Legal never received the note, and the note appears to have been lost in transit.

In 2018, Fannie Mae again filed a foreclosure action against appellees which included a count to re-establish a lost note. Appellees filed an answer and affirmative defenses, asserting failure of conditions precedent and lack of standing. Appellees did not plead res judicata, collateral estoppel, or law of the case based on the 2012 action.

The case proceeded to trial where an employee of Choice Legal testified that Choice Legal had received the original note in October of 2009 from Fannie Mae, and had filed it with the court during the first lawsuit. The employee showed that she had uploaded an image of the note to Choice Legal's case management system. After the 2012 trial, although the court ordered the note to be released back to Fannie Mae by returning it to Choice Legal, Choice Legal never received the note.

A copy of the note was admitted into evidence. The parties stipulated that the original note was filed with the court for the first trial. The parties also stipulated that the court granted Fannie Mae's motion to release the note, and that the note was sent to Choice Legal on July 14, 2017. The court took judicial notice of the 2012 final judgment upon request by appellees during their cross-examination of the Choice Legal employee about when the first case ended. Fannie Mae did not object.

---

[1] The November 9 date appears at the bottom of the note, in what appears to be fax information *from* First Horizon. First Horizon may have sent the allonge to DSK to be signed at a later date. However, the date on the fax would not necessarily be the date when the allonge was executed. Nevertheless, the trial court concluded the first allonge was executed before the date of the note and therefore was invalid.

2

Fannie Mae also called an employee of its loan servicer to testify as to the various documents as well as the amounts due and owing on the mortgage. Appellees were both called as witnesses, and they testified that no payments on the mortgage had been made since 2009.

In closing argument, Fannie Mae's counsel argued that they had established the lost note, referring to the prior judgment as proof that Fannie Mae possessed the note before the note was lost. During appellees' closing argument, for the first time, counsel argued the three indorsements were invalid "based on the law of the case[.]" Because the court in the first judgment had found the allonges "legally insufficient and invalid," and the instant case involved the same note with the same allonges, appellees' counsel argued the indorsements had already been declared invalid, and "[i]f they were invalid back then, they were still invalid today." Therefore, because Fannie Mae relied on an invalid allonge, it lacked standing. Fannie Mae's counsel objected, arguing appellees were asserting a res judicata affirmative defense, which they had waived by not raising it in their answer or a responsive pleading. The court did not rule on Fannie Mae's objection.

The trial court ultimately entered final judgment for appellees. The court held that because the first judgment determined that Fannie Mae did not have standing in the 2012 foreclosure action, Fannie Mae had failed to prove that it was entitled to enforce the note when the note was lost. The court highlighted that Fannie Mae's argument in this case would compel the court to hold that the 2012 judgment's standing conclusion was incorrect, but Fannie Mae had not appealed that judgment. Because the first court had determined Fannie Mae was not entitled to enforce the note based on the same indorsements and allonges, the trial court concluded Fannie Mae had not proven it was entitled to enforce the note when the note was lost.

Fannie Mae moved for rehearing and for a new trial, arguing in part that the trial court erred in considering the 2012 judgment as res judicata, because appellees had waived that affirmative defense. The trial court denied Fannie Mae's motion. This appeal follows.

**Analysis**

Fannie Mae argues that the trial court erred in relying on the finding in the 2012 judgment to determine that it failed to prove its lost note count, because appellees did not raise the affirmative defense of collateral estoppel in their answer, nor was that defense tried by express or implied

3

consent.[2]  Appellees argue collateral estoppel was tried by consent, because Fannie Mae did not object when appellees requested the court take judicial notice of the previous final judgment during the cross-examination of Choice Legal's employee.  Appellees further argue Fannie Mae had the opportunity to defend against the collateral estoppel issue, and Fannie Mae would not have had any additional evidence if appellees had pled collateral estoppel in their answer.  We conclude that the affirmative defenses were not tried by implied consent.

"[C]ollateral estoppel … [is an] affirmative defense[] that ordinarily must be pled in an answer."  *Ramos v. Mast*, 789 So. 2d 1226, 1227 (Fla. 4th DCA 2001).  However, "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings."  Fla. R. Civ. P. 1.190(b).

"An issue is tried by consent when there is no objection to the introduction of evidence on that issue."  *LRX, Inc. v. Horizon Assocs. Joint Venture ex rel. Horizon–ANF, Inc.*, 842 So. 2d 881, 887 (Fla. 4th DCA 2003).  However, "a failure to object cannot be construed as implicit consent to try an unpled theory when the evidence introduced is relevant to other issues properly being tried."  *Anchor Prop. & Cas. Ins. Co. v. Trif*, 322 So. 3d 663, 670 (Fla. 4th DCA 2021) (quoting *Raimi v. Furlong*, 702 So. 2d 1273, 1285 (Fla. 3d DCA 1997)).

Appellees did not raise collateral estoppel in their pleadings, nor did they raise it at trial until closing argument, when they argued that the 2012 judgment was the "law of the case."  While Fannie Mae did not object to appellees' introduction of the 2012 judgment, that judgment was relevant to Fannie Mae's own case.  The 2012 judgment showed Fannie Mae possessed the note when the original note was introduced during the 2012 proceeding and showed that the note had not been cancelled.  Because the judgment advanced other issues in the case, the collateral estoppel defense was not tried by consent.  Thus, the court erred in relying

---

[2] While the appellees argued at trial that the prior final judgment was "law of the case," and Fannie Mae argued alternatively res judicata or collateral estoppel, neither law of the case nor res judicata are the correct principles.  Law of the case does not apply, because the second foreclosure was an entirely different cause of action.  Res judicata would not apply here because subsequent and different defaults are separate causes of action.  *See Depicciotto v. Nationstar Mortg. LLC*, 225 So. 3d 390, 392 (Fla. 4th DCA 2017).  Collateral estoppel is the correct principle to apply.

4

on collateral estoppel to conclude that Fannie Mae was not entitled to enforce the lost note.

Even if collateral estoppel had been tried by implied consent, we would hold that the defense should not apply in this circumstance. Our subsequent legal rulings show that the 2012 judgment was clearly erroneous, such that enforcing an estoppel would be manifestly unjust. "[C]ollateral estoppel is an equitable doctrine, and is not to be invoked where it will lead to pernicious results or where its application will result in a manifest injustice." 32A Fla. Jur. 2d *Judgments and Decrees* § 111 (2022 ed.) (footnotes omitted); *see also State v. McBride*, 848 So. 2d 287, 292 (Fla. 2003) (holding that manifest injustice exception applies to collateral estoppel).

The prior judgment found that the note's first allonge was invalid because it predated the note by five days, even though the allonge was attached to the note. We recently held that an allonge is not invalid simply because it predates the note to which it is attached. In *Bank of New York Mellon v. Florida Kalanit 770 LLC*, 269 So. 3d 571 (Fla. 4th DCA 2019), we explained:

> [T]he fact that the note was executed one day after the allonge did not invalidate the allonge. "An allonge is a piece of paper annexed to a negotiable instrument or promissory note, on which to write endorsements for which there is no room on the instrument itself." *Purificato v. Nationstar Mortg., LLC*, 182 So. 3d 821, 823 (Fla. 4th DCA 2016) (citation omitted). Nothing in this definition explicitly states or even suggests that an allonge may not be executed before the note as long as it is subsequently affixed to the note. Additionally, nothing in Florida's UCC suggests that an allonge may be signed only after executing the note. Significantly, the UCC expressly states that "[a]n instrument may be antedated or postdated." § 673.1131, Fla. Stat. (2018).

*Id.* at 573.

Based upon the correct interpretation of the law as set forth in *Florida Kalanit*, Fannie Mae had standing to enforce the note in 2012, and therefore was entitled to enforce the note when it was lost. Applying collateral estoppel here and perpetuating the 2012 judgment's erroneous conclusion would be manifestly unjust. The appellees borrowed $269,700 and signed a note which was ultimately assigned to Fannie Mae. They stopped paying on the note in 2009. The appellees would never have to

5

repay their debt, and thus would obtain a substantial windfall, if Fannie Mae could not enforce the note and collect the debt due to the erroneous legal ruling in the 2012 judgment.

Fannie Mae proved its entitlement to enforce the lost note. Section 673.3091(1), Florida Statutes (2017), sets forth three requirements to enforce a lost note: 1) the person seeking to reestablish the note was entitled to enforce it when it was lost; 2) the loss was not the result of a lawful transfer or seizure; and 3) the person seeking to reestablish cannot reasonably obtain possession of the note. These may be established by affidavit or by testimony. In this case, Fannie Mae relied on testimony and documents.

A note's holder has standing to enforce the note. § 673.3011(1), Fla. Stat. (2017). We have held that "to be a holder, the instrument must be payable to the person in possession or *indorsed in blank.*" *U.S. Bank Nat'l Ass'n v. Becker*, 211 So. 3d 142, 144 (Fla. 4th DCA 2017) (emphasis added) (citation omitted).

Here, the note was originally indorsed to First Horizon, then to MetLife, and then indorsed in blank by MetLife, making its possessor also its holder with the right to enforce it. Fannie Mae proved possession by showing that it had produced and filed the original note with the court during the 2012 foreclosure action. "Possession of a note by a third-party agent such as a servicer or law firm, gives the 'owner' of the note constructive possession sufficient to establish standing as the note's holder." *U.S. Bank Nat'l Ass'n v. Angeloni*, 199 So. 3d 492, 493 (Fla. 4th DCA 2016); *see also Caraccia v. U.S. Bank, Nat'l Ass'n*, 185 So. 3d 1277, 1279 (Fla. 4th DCA 2016) ("Even where a third party has physical possession of the note, so long as the plaintiff 'had the power to exercise control over it, then [the plaintiff] had constructive possession of the note.'") (alteration in original) (citation omitted). Accordingly, Choice Legal's possession of the note serves as Fannie Mae's possession as well.

It is undisputed that Fannie Mae entrusted the note with Choice Legal in preparation for the first trial, and that Choice Legal filed the note with the court as evidence in that previous case. Financial instruments remain the property of the filing party while in a court's possession. *See MTGLQ Invs., L.P. v. Merrill*, 312 So. 3d 986, 991 (Fla. 4th DCA 2021) ("The note is property, a valuable negotiable instrument, and . . . plaintiff is entitled to remove it from the court file."). Therefore, even while in the court's possession, the note was Fannie Mae's property.

The court's records show the note was not cancelled as a result of the 2012 proceedings, as reflected in the final judgment.  The clerk mailed the note to Choice Legal, but it was lost in transit.  Therefore, Fannie Mae proved it "had possession of the note with a blank indorsement prior to suit being filed, but lost possession of the note under circumstances that would not negate its right to enforce."  *See Luiz v. Lynx Asset Servs., LLC*, 198 So. 3d 1102, 1105 (Fla. 4th DCA 2016).  Fannie Mae also provided testimony that it would indemnify the appellees for any loss that may occur should any other person attempt to enforce the note.  *See* § 673.3091(2), Fla. Stat. (2017).

**Conclusion**

The court erred in relying on the affirmative defense of collateral estoppel to find that Fannie Mae did not re-establish the lost note based on the 2012 judgment.  Appellees had not raised collateral estoppel in their answer, nor was the defense tried by implied consent.  Furthermore, relying on this equitable doctrine under the facts and circumstances of this case, when the legal conclusion in the first judgment was clearly erroneous and would result in the inability to establish this note and collect the debt, would be manifestly unjust.  Because Fannie Mae proved all the elements to establish a lost note, the court erred in finding in favor of the appellees.  We thus reverse and remand for the court to grant the establishment of the lost note and for further proceedings on the mortgage foreclosure.

*Reversed and remanded.*

KLINGENSMITH, C.J., and CIKLIN, J., concur.

\*          \*          \*

***Not final until disposition of timely filed motion for rehearing.***